IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| **PATRICIA FEATHERSTON,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| vs. § | **Civil Action No. 6:05-CV-032-C** |
| § | **ECF** |
| § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| **Defendant.** § | |

**REPORT AND RECOMMENDATION**

This case is before the court upon Plaintiff's complaint filed May 11, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on September 12, 2005, and Defendant filed her brief on October 7, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

**I.   STATEMENT OF THE CASE**

Plaintiff filed an application for a period of disability and disability insurance benefits on September 5, 2001, alleging disability beginning September 22, 1998. Tr. 13. Plaintiff's application

was denied initially, on reconsideration, and in an Administrative Law Judge ("ALJ") decision dated March 15, 2003. Tr. 13. Plaintiff filed a request for review with the Appeals Council and on August 1, 2003, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. This matter then came for a second hearing before the Administrative Law Judge on August 25, 2004. Tr. 13, 253-73. Plaintiff, represented by an attorney, testified in her own behalf. Tr. 256-66. Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 13, 266-72. On September 23, 2004, the ALJ again issued a decision unfavorable to Plaintiff. Tr. 11-23. In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements through September 30, 2003, only and that Plaintiff had not engaged in substantial gainful activity at any time since September 22, 1998. Tr. 13. He found that Plaintiff has "severe" impairments, including headaches, degenerative disc disease of her cervical and lumbar spines, impairment status-post cervical spine surgery, and a history of temporomandibular joint disease. Tr. 14. He found that Plaintiff also had a history of depression, anxiety, and claustrophobia but that her mental impairments were not "severe" prior to the expiration of her insured status. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy prior to the expiration of her insured status.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 16.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 18.

He found that Plaintiff retained the RFC to perform the full range of light work on a sustained basis, except that she could only occasionally perform all positional changes, could not work overhead, and could not perform work that required sudden head or neck movements or constant looking down (*e.g.,* to read). Tr. 22. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform the work of bookkeeper. Tr. 21. The ALJ thus concluded that Plaintiff could return to her past relevant work as a bookkeeper as she performed it and as it is generally performed in the national economy. Tr. 21. The ALJ found, therefore, that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 21-22.

Plaintiff submitted a Request for Review of Hearing Decision/Order on October 13, 2004. Tr. 9-10. The Appeals Council issued its opinion on April 6, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and the additional evidence, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 3-6. The ALJ's decision dated September 23, 2004, therefore, became the final decision of the Commissioner.

On May 11, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir.

2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 4 that Plaintiff was not disabled because she retained the RFC to return to her past relevant work prior to the expiration of her insured status. Tr. 21, 23.

### III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ erred by picking and choosing only the evidence that supported his position. Plaintiff further claims that the ALJ erred by not giving the opinion of the treating physician controlling weight.

**A.    Whether the ALJ erred by picking and choosing only the evidence that supported his position.**

Plaintiff argues under her first point of error that the issue is Plaintiff's problems with her neck, but the ALJ discussed Plaintiff's other impairments.

Defendant correctly responds that when Plaintiff filed for benefits, she alleged disability due to neck injuries and mental impairments. Tr. 104. At the administrative hearing on August 25, 2004, Plaintiff testified that she was disabled due to pain in her neck, shoulders, and arms, numbness and weakness in her hands, and pain in her lower back. Tr. 258, 260-63. Thus, the ALJ's discussion of Plaintiff's lumbar spine, gait, arms, legs, hands, and reflexes was appropriate. However, since Plaintiff has limited her arguments to issues related only to her neck, the court will limit its consideration of other matters.

Plaintiff specifically claims that the ALJ erred by picking and choosing only the evidence that supported his position. "[I]t is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff complains that the ALJ discussed Plaintiff's lumbar spine, her extremities, and other claimed impairments addressed by a report of Dr. Martin Franklin while ignoring Dr. Franklin's statement on the same page that Plaintiff had no range of motion in her neck. However, this report was based on Dr. Franklin's examination of Plaintiff only 37 days after Plaintiff's operation on her neck, and the report states that Plaintiff "is currently in a stiff neck brace, which allows no range of motion. The brace is not to be removed per instructions of her physician for several months." Tr. 224. Moreover, in reviewing the medical evidence, the ALJ stated repeatedly in his decision that Plaintiff had a limited range of motion of her neck and that, after her neck surgery, "she wore a stiff neck brace which allowed no range of motion of her neck." Tr. 18.

Next, Plaintiff complains that the ALJ accepted Dr. Joe Ellis Wheeler's statement that Plaintiff was healing well but does not acknowledge that, in the same paragraph, Dr. Wheeler states that Plaintiff has so much of her neck fused that she cannot look down at her work or when she reads. To the contrary, in discussing Dr. Wheeler's reports the ALJ refers specifically to Plaintiff's "restrictions in looking up and down." Tr. 18, 20. He also referred to Plaintiff's stiff neck brace after surgery which allowed her no range of motion of her neck. Tr. 18.

Thus, none of Plaintiff's specific claims that the ALJ inappropriately picked and chose only the evidence that supports his position has merit. Plaintiff has failed to identify any evidence favorable to Plaintiff that was not discussed and reasonably considered in the ALJ's decision.

In any event, the ALJ stated in his decision that he gave careful consideration to all of the record evidence as required by *Loza*. Tr. 14; *Loza*, 219 F.3d at 393. He considered and specifically reported Plaintiff's medical records at length. Those relating primarily to Plaintiff's neck were reported generally as follows:

1. The ALJ found that Plaintiff had degenerative disc disease of her cervical spine and status-post cervical spine surgery, among other impairments, which were a severe combination of impairments. Tr. 14. He noted that Plaintiff had a vehicle accident in 1996 and reported having neck pain ever since. Tr. 16. Physical therapy, chiropractic treatment, and acupuncture did not significantly improve her condition. Tr. 16-17. Radiographic testing showed degenerative changes, spondylosis, and the loss of disc space at multiple levels of her cervical spine, and Plaintiff reported tenderness throughout her neck. Tr. 17. Plaintiff's range of motion of her neck was limited, but her strength was intact and she did not exhibit any neurological deficits. *Id.* Plaintiff saw Dr. Daniel Vaughn, a neurologist, for an examination and electromyogram (EMG) testing. *Id.* She had tenderness and spasms, her strength was preserved, her reflexes were normal, her sensation was essentially normal, her coordination was intact, her gait was normal, and the EMG and a nerve

conduction study were normal, showing no evidence of radiculopathy. *Id.* Plaintiff was referred for facet block injections, but she did not attend the appointment. In April 2001 she said that she did not wish to undergo the injections at that time. She was advised to walk regularly for exercise. *Id.*

2. Plaintiff began chiropractic treatment in February 2001 with Dr. Shaughn Sims. She exhibited decreased range of motion of her neck and was diagnosed with degenerative joint disease, osteoarthritis, and multiple subluxation of the cervical spine. She described her pain as a dull ache in her upper cervical spine and tight musculature in her lower cervical spine. Her gait remained normal, and in April 2001 Dr. Sims noted that Plaintiff had responded well to treatment and had significant relief from her symptoms. *Id.*

3. Radiographic testing in October 2001 showed osteophytes and degenerative changes throughout Plaintiff's cervical spine, but there was only mild neural foraminal narrowing and no sign of significant spinal stenosis. *Id.*

4. Plaintiff was examined by Dr. Paul McDonough, a neurosurgeon, in December 2001. He indicated that Plaintiff had mild tenderness over her neck, reduced range of motion of her cervical spine, and multiple levels of cervical degenerative disc disease, but her strength remained full, and she did not have any focal weakness, numbness, or clinical myelopathy. Dr. Wheeler had similar findings that month. He indicated that Plaintiff's range of motion of her neck was reduced and she walked in a flexed position. She complained of severe pain in her neck and a loss of grip strength, but her examination indicated that her strength of grip and other areas were within normal limits. Surgery was recommended, and in March 2002 Plaintiff underwent a discectomy and fusion at C3-4, C5-6, and C6-7 of her cervical spine. Plaintiff tolerated the procedure well. Post-surgery radiographic testing in April 2002, indicated that the fusion was well incorporated at C3-4, but no fusion mass was seen at C5-6 and C6-7. *Id.*

5. In April 2002 Plaintiff underwent a consultative examination with Dr. O. Martin Franklin and reported that she continued to have constant pain in her neck and other areas, but her pain was much better than prior to the surgery. She claimed that she could stand only 15 minutes, sit only 15 minutes, and walk only half a block at a time due to her pain, and she wore a stiff neck brace which allowed no range of motion of her neck. Her gait was guarded, but normal, she was able to heel and toe walk, and her straight leg-raising test was negative bilaterally. Plaintiff was unable to abduct her shoulders beyond 90 degrees due to neck pain, but the range of motion of her upper extremities was otherwise full. Her strength was good in her upper extremities and her reflexes were intact. Tr. 18.

6. In August 2002 Dr. Wheeler noted that Plaintiff was healing well and her pain was primarily gone, except at the base of her skull. Dr. Wheeler opined that it would be difficult for her to hold down an 8-hour-a-day job due to her restrictions in looking up and looking down. EMG and nerve conduction studies in December 2002 were consistent with some C7 radiculopathy/nerve root irritation. However, an MRI showed no evidence of nerve root compression or other severe abnormalities. It showed disc bulges and osteophyte formation at C4-5 and C6-7 of Plaintiff's cervical spine, but there was minimal neural foraminal narrowing and degenerative facet disease, with no sign of herniation, stenosis, or nerve root compression. *Id.*

The ALJ then considered and discussed Plaintiff's subjective allegations of pain and other symptoms. He found that her allegations were not entirely credible because they had been inconsistent with and out of proportion to the other record evidence. *Id.* He specifically considered and discussed Plaintiff's subjective allegations as follows:

1. He considered Plaintiff's very good work history. She testified at her first hearing that she stopped working due to severe pain in her neck, shoulders, and arms and continued to have severe pain after her neck surgery in March 2002. Her neck pain shot down her arms into her

-8-

fingers and caused difficulty with writing and holding her head up or down. She did not sleep well, she could not do many household chores due to her pain, and she could not lift more than two pounds. *Id.*

2. She testified at her second hearing that she had constant pain in her neck, shoulders, and arms due to a motor vehicle accident in 1996 and that she cannot take normal pain medications due to allergies. Tr. 19. She had limited head movement, and her hands become numb and swell at times. Dr. Wheeler told her that he could not do anything else for her. She tries to work on a computer for 30 minutes at a time, but her pain worsens. It is difficult for her to drive, and she must turn her whole body to look when driving. S he drives in the early morning when there is not much traffic. Walking causes pain in her low back and hip, and her neck becomes stiff as it is jarred by her walking. She is at home most of the time, and she lies down a lot to help take pressure off of her neck. She can look up only very slightly, but she can wash her hair. *Id.*

3. The ALJ did not doubt that Plaintiff had experienced pain and discomfort in her neck, upper extremities, and back due to her degenerative disc disease and other impairments. Tr. 19. However, he found that the evidence did not indicate that Plaintiff was disabled or that she was as limited as she alleged. The examinations prior to her surgery indicated that she had tenderness and occasional muscle spasms in her neck and shoulders, and the range of motion of her neck was limited. However, the range of motion of her shoulders and upper extremities was normal. She also had full grip strength and full strength in her upper extremities, even though she claimed that she had difficulty holding onto things and could not lift more than two pounds. Radiographic testing showed degenerative changes and osteophyte formation of her cervical spine, but there was no evidence of herniation, stenosis, nerve root compression, or any other condition that would cause the severe, debilitating pain that Plaintiff alleged, and she did not experience any significant

neurological deficits. *Id.* Plaintiff's gait was independent and usually described as normal. There was no sign of focal weakness or numbness. *Id.*

    4.    He observed that although Plaintiff alleged that she continued to have severe and disabling pain after her neck surgery, Dr. Wheeler's treatment notes indicated that Plaintiff did well after surgery and that the surgery eventually developed a solid fusion. Tr. 19. She exhibited good strength and sensation of her hands and upper extremities, her surgical wounds healed well, and she admitted that her pain had improved, all of which was inconsistent with her testimony. Although an EMG in December 2002 suggested evidence of radiculopathy due to nerve root compression, radiographic testing at that time showed no sign of nerve root compression, stenosis, or herniation. A consultative examination by Dr. Franklin indicated that Plaintiff's gait was normal but guarded, her straight leg-raising test was negative, and she could heel and toe walk. Her strength was good, even in her upper extremities. The range of motion of her neck and back was limited, particularly her neck, but her examination did not support her claim that she could sit, stand, and walk only a few minutes at a time. The ALJ found that the evidence certainly did not support Plaintiff's claim that she was unable to lift more than two pounds. In addition, in August 2002 Dr. Wheeler noted that Plaintiff's pain was primarily gone, except for some pain at the base of her skull. *Id.*

Based on these observations, the ALJ determined that Plaintiff did not have the disabling pain that she claimed and that her allegations regarding her pain and limitations to her back and upper extremities seemed exaggerated and were inconsistent with the objective evidence. Tr. 19. He recognized that Plaintiff may have experienced some degree of pain but that even a moderate level of pain, standing alone, is not incompatible with the performance of certain levels of sustained work activity. Tr. 20. He concluded that neither the objective medical or other evidence nor any reasonable inference therefrom established that Plaintiff's ability to function was so severely

impaired as to preclude the performance of any work activity prior to the expiration of Plaintiff's insured status. *Id.*

Questions of credibility are the responsibility of the ALJ to resolve. *Masterson*, 309 F.3d at 272. Social Security Ruling 96-7p provides that in making a credibility determination, the ALJ may consider

> the medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

SSR 96-7. The ALJ is further instructed to consider the entire record. *Id.* The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, including Plaintiff's specific subjective claims of disabling pain, in making his credibility determination. His credibility determination is supported by substantial evidence in the record.

In summary, the ALJ fairly considered all of the record evidence, including the subjective evidence and his credibility determinations thereon. The court finds that the ALJ committed no error in his consideration, that he did not inappropriately pick and chose only the evidence that supported his position, and that the ALJ's decision is supported by substantial evidence. Plaintiffs claims under point of error 1 are without merit.

**B.    Whether the ALJ erred in not giving the opinion of the treating physician controlling weight.**

Under point of error 2, Plaintiff argues that the ALJ erred by not giving the opinion of Plaintiff's treating physician, Dr. Wheeler, controlling weight. The specific opinion in question is Dr. Wheeler's opinion in his report dated August 2, 2002, that "it would be difficult for [Plaintiff] to hold down an eight hour day job due to her restriction in looking up or looking down." Tr. 235.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

However, "[a]mong the opinions of treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner,'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. §404.1527(e)(1)). The regulation requires that the ALJ must consider the six factors in subsection (d) only with respect to the *medical opinions* of treating physicians. The factors do not apply to opinions "reserved to the Commissioner." Dr. Wheeler's opinion in question is one of those legal conclusions that is reserved to the Commissioner. Thus, Dr. Wheeler's opinion that it would be difficult for Plaintiff "to hold down an eight hour day job" had no special significance, and the ALJ was not required to give it controlling weight or to consider the six factors in the regulation. *Id.*

The ALJ addressed this opinion in his decision. Tr. 20. He stated that Dr. Wheeler was not an expert in vocational or occupational matters. He agreed, however, with Dr. Wheeler's opinion that Plaintiff had a limited range of motion in her neck, and he found that Plaintiff could not perform any overhead work or sudden head movements, that she could not perform activities that required her to look down constantly, and that she was reasonably limited to only occasional postural

activities. He noted that Plaintiff's examinations indicated that she otherwise functioned fairly well and that Dr. Wheeler indicated that Plaintiff's pain was primarily gone. He found that Dr. Wheeler's opinion that Plaintiff had a limited range of motion of her neck that caused difficulty looking down was reasonably supported by the evidence, but his opinion that Plaintiff was disabled was not consistent with the overall evidence. The limited range of motion of Plaintiff's neck did not reasonably render her disabled as defined in the regulations. She healed and recovered well after her surgery, and the overall evidence does not show that she was disabled. *Id.*

The court finds that the ALJ did not err by failing to give Dr. Wheeler's opinion controlling weight because the opinion in question was a legal conclusion reserved to the Commissioner. The court further finds that the ALJ's decision that the Plaintiff was not disabled is supported by substantial evidence.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.

Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 29th day of August, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**